UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| MARK S. HORTON | * | CIVIL ACTION NO. 09-0915-JVP-DLD |
|---|---|---|
| VERSUS | * | JUDGE: JOHN V. PARKER |
| CHAPLAIN JACKSON, ET AL | * | MAGISTRATE JUDGE: DOCIA L. DALBY |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

MAY IT PLEASE THE COURT:

I. **REQUESTED RELIEF**

Defendants, Chaplain Jackson, Lt. Scott, Warden Dennis Grimes, and Sheriff Sid J. Gautreaux, III, move this Court to dismiss the claims asserted by plaintiff, Mark S. Horton (hereinafter "plaintiff"), against them pursuant to the Federal Rules of Civil Procedure, more particularly 12(b)(6), for failure to state a claim upon which relief can be granted.

II. **FACTS**

Plaintiff has appeared in his individual capacity filing this lawsuit against four defendants, Chaplain Jackson, Lt. Scott, Warden Dennis Grimes, and Sheriff Sid J. Gautreaux, III (hereinafter "defendants"). Defendants deny all allegations made by the plaintiff. However, for purposes of this motion, and this motion only, all allegations set forth in plaintiff's complaint

1

are assumed to be true. But even if all the allegations made by plaintiff are assumed to be true, the plaintiff has not stated a claim upon which relief can be granted against the defendants.

On August 24, 2009, Lt. Scott informed prison personnel that Muslim inmates would be allowed to observe Ramadan from August 21, 2009 through September 19, 2009. Please see the Affidavit of Lt. Johnny Scott, which is attached hereto as Exhibit 1. The provisions adopted for Muslim inmates included escorting the inmates to the kitchen for meals before sunrise and after sunset.

Plaintiff was in lockdown the entire month of Ramadan. On April 23, 2009, plaintiff was placed in lockdown due to a disciplinary incident. Please see the Affidavit of Deputy Mary Lynne Henson, which is attached hereto as Exhibit 2. He remained in lockdown until his release from prison, because he requested a transfer to another unit and stated that he could not live in his current unit. *Id*. Since the other unit was unavailable, plaintiff was placed in lockdown pursuant to the policy of the prison. Due to the additional expenses and the higher risk of security involved with escorting an inmate from lockdown to the kitchen, plaintiff was not escorted to the kitchen area for meals before sunrise and after sunset with the other Muslim inmates. However, plaintiff did receive his breakfast prior to sunrise at approximately 4:00 a.m. every morning while he was in lockdown, including the entire length of Ramadan. Further, plaintiff was served dinner at approximately 4:00 p.m. every night.

On September 4, 2009, the East Baton Rouge Parish Prison received an Inmate Grievance submitted by Mark Horton, which stated that no provisions were made for Muslims. East Baton Rouge Parish Prison rejected the Inmate Grievance submitted by Mark Horton based on the fact that he was in lockdown during Ramadan and that the prison implemented provisions for all Muslims to observe Ramadan on August 24, 2009. On September 29, 2009, Mark S. Horton

2

signed a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983. Chaplain Jackson, Lt. Scott, Warden Dennis Grimes, and Sheriff Sid J. Gautreaux, III were named as defendants in the complaint. The complaint alleges that Muslims were denied their constitutional right to practice their religion without [hardships]. (Plaintiff's Complaint at p. 3.)

## II. LAW AND ARGUMENT

### A. MOTION TO DISMISS STANDARD

A motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6), requires that the court determine whether a cognizable claim has been pleaded in the complaint.[1] The basic federal pleading requirement is contained in Federal Rule of Civil Procedure 8(a), which states that a pleading "shall contain…a short plain statement of the claims showing that the pleader is entitled to the relief."[2] In practice, "a complaint…must contain either direct or inferential allegations respecting all of the material elements {in order} to sustain a recovery under some viable legal theory."[3] Although the rule is that a litigant's pleading obligations in federal courts are minimal, the pleader must still allege facts, either directly or inferentially, that satisfy each element required for a recovery under some actionable legal theory, the pleading requirement, though low, "is real" and is "not entirely a toothless tiger".[4] This lawsuit is fatally flawed in its legal premises and destined to fail as against the defendants. Therefore, the Motion to Dismiss should be granted.

### B. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff has filed a claim against Chaplain Jackson, Lt. Scott, Warden Dennis Grimes, and Sheriff Sid J. Gautreaux, III pursuant to Title 42 U.S.C. § 1983. Each defendant is entitled to

---

[1] *Roberts v. Alan Ritchey, Inc.*, 962 F.Supp. 1028, 1030 (S.D. Ohio 1997).
[2] *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. Mich. 1976).
[3] *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. Ill. 1984) cert. denied, 470 U.S. 1054, 84 L.Ed.2d 821, 105 S.Ct. 1758 (1985).
[4] *Doyle v. Hasbro, Inc.*, 103 F.3d 186,190 (1st Cir. Mass. 1996).

3

qualified immunity. Therefore, this action must be dismissed with prejudice, and judgment entered for defendants.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5] As the Fifth Circuit observed, in determining whether a plaintiff can overcome qualified immunity, courts "conduct a two-prong inquiry…"[6] The Fifth Circuit explained as follows:

> "The first inquiry must be whether a constitutional right would have been violated on the facts alleged. If a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established."

*Id.* at 322-23, citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

"Ultimately, a [government] actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *Id.* at 323.

Once a defendant pleads immunity, the "burden shifts to the plaintiff" to rebut the defense by establishing the official's "allegedly wrongful conduct violated clearly established law."[7] A finding of clearly established law requires plaintiff to identify cases of controlling authority in his jurisdiction at the time of the incident which clearly established the rule on which he seeks to rely, or identify a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.[8] The right at issue must be defined with "sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." *McClendon,* 305 F.3d at 331. Therefore, it is not sufficient for plaintiff to establish the existence

---

[5] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[6] *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (*en banc*).
[7] *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).
[8] *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

4

of a right "at a general level", rather, he must show that pre-existing law made it clear that defendants' "specific actions" were unconstitutional. *Id.* at 330 (that six Circuits recognize state-created danger theory at "general level" insufficient to place defendants on notice).

The law of this jurisdiction has clearly established that the defendants acted lawfully. The plaintiff cannot meet his burden and show that the defendants "specific actions" were unconstitutional.

In *Walker*,[9] the Fifth Circuit determined whether the rules and regulations imposed on prisoners were "reasonable and justifiable in the administration of a large prison population, maintenance of discipline, and control of any dangers and hazards presented." *Id.* at 24. In *Walker*, Black Muslim prisoners appealed a ruling of the district court which held, among other things, that the warden's denial of their request to be served a specified restricted diet during Ramadan was reasonable, unarbitrary, and within his constitutional limits of discretion. *Id.* The Fifth Circuit upheld that portion of the decision and stated that while there was no substantial burden caused to prisons by allowing a Passover Seder meal to Jewish inmates, providing a special diet to Muslim inmates after sunset during the thirty days of Ramadan was not required. *Id.* The Court based its decision on the administrative burden and security problems and expenses that it would cause. *Id.*

The *Walker* Court applied the compelling state interest test as applicable to prisoners' religious rights. *Id.* The Court used the test from *Jackson v. Godwin* and applied it to the religious practices in question. *Id.* citing *Jackson v. Godwin*, 400 F.2d 529, 535 (5th Cir. 1968). The Fifth Circuit stated the following:

> "In both the areas of racial classification and discrimination and First Amendment freedoms, we have pointed out that stringent standards are to be applied to governmental restrictions in these areas, and rigid scrutiny must be

---

[9] *Walker v. Blackwell*, 411 F.2d 23 (5th Cir. 1969)

brought to bear on the justifications for encroachments on such rights. The [government] must strongly show some substantial and controlling interest which requires the subordination or limitation of these important constitutional rights, and which justifies their infringement, and in the absence of such compelling justification the [government] restrictions are impermissible infringements of these fundamental and preferred rights."

*Id.*

Thus, according to *Jackson*, the prisoner must first show that he was deprived of a right either by (1) deliberate discrimination, or by (2) even handed application of an inherently discriminatory rule. *Jackson*, 400 F.2d at 537-540. Then, in order to continue such a policy of deprivation, the government must show a compelling and substantial public interest requiring the subjugation of the right. *Walker*, 411 F.2d 23 at 25.

The prisoners in *Walker* claimed that they wanted to observe Ramadan between 6:00 and 9:00 in the evenings, after normal dinnertime, but at a time when it would not cause interference with their regular work schedule at the prison. *Id.* However, the prison officials stated that the after sunset hour created a security problem because movement of people after sunset would require additional staff. *Id.* The Fifth Circuit affirmed the district court's ruling and stated the following:

> "considerations of security and administrative expense outweigh whatever constitutional deprivation petitioners may claim. In this regard, the court holds that the government has demonstrated a substantial and compelling interest, that of security, which compels the deprivation of these after-sunset meals during the month of December (Ramadan)."

*Id.* at 26.

In the current matter, the plaintiff's complaint contains similar allegations that were resolved by the Fifth Circuit in *Walker*. Even if stringent standards are to be applied to the defendants' restrictions, the defendants' actions demonstrated a substantial and compelling interest, that of costs and security, which compels the deprivation of plaintiff's access to meals

6

before sunrise and after sunset while the plaintiff is in lockdown.

Similarly, in *Omar*,[10] the plaintiff was held at the United States Penitentiary at Pollock, Louisiana, and he alleged that he was deprived of his First Amendment free exercise rights to practice his Muslim religion. Plaintiff's allegations included claims that officers refused to serve him meals after sundown during Ramadan and that officers abused him verbally and nonverbally while he was trying to pray. *Id.*

The Court stated that the claims turned on whether or not a *de minimis* threshold test applied to First Amendment free exercise claims. *Id.* at 591. After considering the law of other circuits, the Court held that "it is a function of the court under the law to make an inquiry as to whether the actions taken by the defendants had more than a *de minimis* impact on the free exercise rights of the detainee." *Id.* at 593. The Court also stated that "while courts are generally not well-suited to examining the centrality or substantiality of a particular belief to a given religion, courts regularly examine the substance of particular behaviors and therefore can apply them to a static, unquestioned concept of religious practice." *Id.* citing *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998). As a result, the Court found that the refusal to hold three meals because of Ramadan states only, at most, a *de minimis* imposition on plaintiff's free exercise rights. *Id.* As such, the claims were dismissed.

The plaintiff in *Omar* further alleged that officers mocked his religion by nonverbal communication and verbal statements regarding his prayer *Id.* at 593. The Court held that those claims could not survive summary judgment because, even taken as true, they also failed to allege more than a *de minimis* violation of plaintiff's First Amendment rights. *Id.*

Based on the above court decisions, the burden is on the prisoner to show either deliberate discrimination or even handed application of an inherently discriminatory rule. The

---

[10] *Omar v. Casterline*, 414 F. Supp. 2d. 582 (W.D. La. 2006).

prison officials must then show a compelling and substantial public interest requiring the subjugation of the right. Since the defendants made provisions for the observance of Ramadan for all Muslim prisoners, including the plaintiff, it is clear that the plaintiff cannot show either deliberate discrimination or even handed application of an inherently discriminatory rule. Further, the Fifth Circuit has previously ruled that similar actions show a compelling and substantial public interest. Additionally, the allegations against defendants would constitute, at best, a *de minimis* violation of plaintiff's right.

### C. PLAINTIFF'S CLAIMS FAIL TO IMPLICATE ANY CLEARLY ESTABLISHED RIGHT

Plaintiff identifies essentially one act that he claims deprived him of the right to practice his religion: No provisions were established which allowed Muslims to perform their obligations of fasting according to the guidelines of the Holy Month of Ramadhan. (Plaintiff's Complaint at p. 4.) He attributes this act to defendants.

To reach the level of a constitutional violation in the prison environment, the interference with one's practice of religion must be more that an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine."[11] Moreover, even substantial restrictions on an inmate's religious rights are permissible so long as they are "reasonably related to legitimate penological concerns."[12]

Plaintiff asserted the following claims against defendants: "Nothing has happened as of today the 19th day of September 2009 (which is the end of Ramadhan) and we Muslims were denied our constitutional right to practice our religion without harshships [sic]." (Plaintiff's complaint at 3.) However, the undisputed facts prove that all Muslims were provided special provisions by the prison which allowed them to perform their obligations of fasting during

---

[11] *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).
[12] *Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996).

8

Ramadan. (Exhibit 1).

In fact, all Muslims were escorted to the kitchen for meals before sunrise and after sunset. However, plaintiff was living in lockdown during the entire month of Ramadan. Plaintiff was initially placed in lockdown because of a disciplinary action on April 23, 2009. He remained in lockdown for the remainder of his sentence because he notified the prison that he could no longer live in his current unit. (Exhibit 2). Pursuant to the prison's policy, plaintiff was placed in lockdown because the other unit that he requested a transfer to was unavailable. Allowing plaintiff to be escorted from lockdown to the kitchen area for meals prior to sunrise and after sunset with the other Muslim inmate during Ramadan would have added an unreasonable burden to the prison's costs and would have affected the security of all inmates. However, plaintiff was served his breakfast at approximately 4:00 a.m., which is prior to sunrise.

The limited restrictions on plaintiff's religious rights were permissible because the restrictions were reasonably related to legitimate penological concerns. Certain restrictions on a prisoner's religious expression may be necessary to protect legitimate institutional and penological interests, and prison officials' recommendations in this regard, though not dispositive, are given great deference.[13]

Based upon the allegations set forth in the plaintiff's petition, the plaintiff has failed to state a cognizable claim for relief against defendants for the alleged injuries he sustained in this incident.

---

[13] *Barrett v. Virginia*, 689 F.2d 498, 501 (4th Cir. 1982)

### D. PLAINTIFF FAILS TO MAKE ALLEGATIONS AGAINST GAUTREAUX, SCOTT, OR GRIMES

Examining the claims attributed to defendants herein, each defendant is entitled to dismissal as a matter of law. Further, the complaint contains no factual allegations whatsoever regarding Sheriff Sid J. Gautreaux, III. Sheriff Sid J. Gautreaux, III is only identified by name in the caption and in the list of additional defendants. (Plaintiff's complaint at pp. 1 and 4).

Additionally, the complaint contains virtually no factual allegations against either Lt. Scott or Warden Dennis Grimes, only stating the following:

> "I first talked to Chaplain Jackson and he said he was not going to make or change anything nor was Capt. Scott nor Warden D. Grimes."

(Plaintiff's Complaint at p. 3.)

Because potential *Bivens*[14] liability flows to each officer individually, it is hornbook law that personal participation in the allegedly unconstitutional act is a necessary predicate to any tort claim.[15] Part and parcel of the requirement to plead personal involvement, there is no doctrine of *respondeat superior* in *Bivens* actions. *Id.* The Court must examine the "specific conduct of each of the individual defendants in determining whether that particular defendant acted in an 'objectively unreasonable' manner."[16]

This personal misconduct requirement derives directly from the fundamental purpose underlying the creation of constitutional tort claims. As the Supreme Court has noted, the purpose of the *Bivens* remedy "from its inception" was "deterrence of individual officers who commit unconstitutional acts."[17] As such, "[a] defendant is not responsible for actions in which

---

[14] *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971).
[15] *Cronn v. Buffington,* 150 F.3d 538, 544 (5th Cir. 1998).
[16] *Rouse v. Plantier,* 182 F.3d 192, 199-200 (3d Cir. 1999).
[17] *Corr. Serv. Corp. v. Malesko,* 122 S. Ct. 515, 522 (2001).

he did not himself participate", and "when these prerequisites for liability are not satisfied", Fed. R. Civ. P. 12 mandates dismissal.[18] (Attorney General and INS Director entitled to dismissal of detainee's condition on confinement claim where no "factual allegations" indicated each "acted directly to deprive him of his constitutional rights").

Since plaintiff's Complaint fails to make any allegations against Lt. Scott, Warden Dennis Grimes, and Sheriff Sid J. Gautreaux, III, these defendants must be dismissed from this case. It is clear that a dismissal is mandated because Lt. Scott, Warden Dennis Grimes, and Sheriff Sid J. Gautreaux, III did not participate in any action alleged in plaintiff's Complaint.

## IV. CONCLUSION

In a suit for damages under Title 42 U.S.C. § 1983, a plaintiff must (1) identify a right secured by the United States Constitution and (2) the deprivation of that right by a person acting under color of state law.[19] The plaintiff must show the officer's actions are unconstitutional and that the officer should have known that he was violating the plaintiff's rights.[20] As such, the United States Court of Appeals for the Fifth Circuit has "consistently held that plaintiffs who invoke § 1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss."[21] The heightened pleading requirement in civil rights cases against those asserting immunity is necessary because to allow traditional discovery to commence based on broadly worded complaints "effectively eviscerates important functions and protections of official immunity."[22] In evaluating the merit of defendants'

---

[18] *Oladipupo v. Austin*, 104 F. Supp. 2d 623, 625 (W.D. La. 2000), *aff'd on other grnds*; *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001).
[19] *Carlton v. Davisson*, 104 Ohio App. 3rd 636, 652, 662 N.E.2d 1112, 1122 (1995).
[20] *Stemler v. City of Florence*, 126 F.3d 856, 866 (6th Cir. Ky. 1997).
[21] *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. Tx. 1988).
[22] *Id.* at 1553.

11

Case 3:09-cv-00915-BAJ-DLD   Document 9-1   04/22/10   Page 11 of 14

immunity defense, the Court "accept[s] the allegations of [plaintiff's] complaint as true."[23]

Defendants raise the defense of Qualified Immunity. "One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit."[24] It is well settled that the qualified immunity analysis entails a two-step process. First, a court must determine whether plaintiff has alleged the violation of a constitutional right. Second, if the plaintiff has alleged a constitutional violation, the court must decide if the conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred.[25]

In the matter at hand, the plaintiff does not even come close to alleging a violation of a constitutional right by defendants.[26] The facts as alleged by plaintiff in the complaint support a finding that defendants should be dismissed from this litigation. In the instant case, when the facts as alleged by plaintiff are viewed in a light most favorable to plaintiff, plaintiff's complaint does not state a claim upon which relief can be granted in relation to defendants.

Even if plaintiff's complaint does allege violations, defendants are still entitled to qualified immunity because the petition does not reflect that they acted objectively unreasonably.[27] Insubstantial lawsuits can quickly be terminated in federal courts alert to the possibilities of artful pleading. Unless the complaint states a compensable claim for relief, it should not survive a motion to dismiss. Moreover, the court recognized in *Scheuer*[28] that damage suits concerning constitutional violations need not proceed to trial but can be terminated on properly supported motions for summary judgment based upon the defense of immunity. In

---

[23] *Kalina v. Fletcher*, 522 U.S. 118, 122, 118 S. Ct. 502, 505, 139 L. Ed. 2d 471 (1997) (citation omitted).
[24] *Jackson v. City of Beaumont Police Department*, 958 F.2d 616 (5th Cir. Tx. 1992).
[25] *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. Tx. 2001) (citations omitted).
[26] See *Evans v. Marlin*, 986 F.2d 104, 108 (5th Cir. Tx. 1993).
[27] *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).
[28] *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

response to such a motion, plaintiffs may not play dog in the manger; and firm application of the federal rules of civil procedure will assure that officials are not harassed by frivolous lawsuits."[29]

To defeat a 12(b) Motion, the Petitioner needs to make more than an allegation of a violation; the Petitioner needs to provide factual allegations that would support his claim. In the instant matter, no such allegation has been made against defendants.

For the reasons more fully set forth above, the complaint fails to state a claim upon which relief can be granted against defendants and therefore must and should be dismissed with prejudice.

Respectfully Submitted:

CRAWFORD LEWIS, P.L.L.C.

s/ Tara L. Johnston
JAMES R. LEWIS (#8844)
MARY G. ERLINGSON (Bar Roll # 19562)
TARA L. JOHNSTON (Bar Roll # 28100)
450 Laurel St., Suite 1600
P.O. Box 3656
Baton Rouge, Louisiana 70821-3656
(225) 343-5290

---

[29] *Butz v. Economou,* 438 U.S. 478, 507-508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the above and foregoing Memorandum in Support of Motion to Dismiss has this day been sent by U.S. postal mail, postage prepaid, to plaintiff as follows:

**Mark S. Horton**
**850 Progress Street**
**Baton Rouge, LA 70802**

Baton Rouge, Louisiana, this 22nd day April, 2010.

s/ Tara L. Johnston
Tara L. Johnston